# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### 1:17-cv-76-FDW

| | | |
|---|---|---|
| JOSHUA L. BURR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| MACON COUNTY SHERIFF'S OFFICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by

Defendants Scott Marion, Justin Crane, and Dale Clouse.  (Doc. No. 24).

## I.     BACKGROUND

### A.     Procedural Background

Pro se Plaintiff Joshua L. Burr, a former inmate at Mountain View Correctional

Institution in Spruce Pine, North Carolina, filed this action under 42 U.S.C. § 1983 on March 16,

2017, alleging claims of excessive force against Defendants for conduct while he was a pre-trial

detainee at the Macon County Detention Center.  Moving Defendants are Dale Clouse, Justin

Crane, and Scott Marion, who were all working as officers at the Macon County Detention

Center at all relevant times.  Plaintiff alleges that Defendants Clouse and Crane violated

Plaintiff's federal constitutional rights by placing him in a restraint chair for about two hours in

extremely tight, four-point restraints, and that Defendant Marion failed to intervene to loosen the

restraints.

On October 12, 2018, Defendants filed the pending summary judgment motion.  (Doc.

No. 24).  On October 16, 2018, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court.  (Doc. No. 26).  Plaintiff did not respond to the summary judgment motion and the time to do so has passed.[1]

## B.     **Factual Background**

### 1.     **Plaintiff's Allegations**

Plaintiff alleges the following facts to support his claim:

On 3/7/2017 at approximately 9:00 a.m. after trying to get the attention of the medical officer [Defendant Clouse] by tapping on the door, since the food flat was closed due to me being on "lockdown" for an argument the night before Officer [Clouse] came in my cell and told me to put my hands behind my back which I did advising that it hurt to do so due to a spinal injury that I received the previous year by being assaulted by an inmate Kris Prince while in the custody of MCSO, Officer [Clouse] took me upstairs via the elevator while jerking on the cuffs took and to a holding cell 238, and put me in a restraining chair with my hands behind my back and puling the straps as tight as he could and for almost 3 hours.  I was retightened in that chair by Officer Justin Crane and Office Mace pulling the straps with all the strength they had, this caused me extreme pain and discomfort due to my injury until my shoulders were throbbing and shooting pain, up my arms and neck.  I advised them by yelling that it hurt and to please put my hands in the straps (soft cuffs) on the side.  They kept my arms behind my back, while Scott Marion sat in a chair in front of my cell and folded his arms watching me.  They are aware of my condition, which is worsened as a result in pain and stiffness affecting my dexterity with my hands.  It has caused me great anxiety and depression as well as the physical damage.  I will have no chance of continuing my trade as an electronic technician/fiber/optic tech/installer.

(Doc. No. 1 at 3-4).  Here, based on his factual allegations, it appears that Plaintiff purports to bring a claim against Defendants Crane and Clouse for excessive force, with a

---

[1]  Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims.  <u>See</u> <u>Crosby v. Gastonia</u>, 635 F.3d 634, 637 n.3 (4th Cir. 2011).  In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

failure to intervene claim against Defendant Marion. Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages. (Id. at 4).

**2.     Defendants' Summary Judgment Evidence**

In support of their summary judgment motion, Defendants have presented affidavits of Corporal Brian Mitchell, Defendant Dale Clouse, Defendant Scott Marion, Macon County Sheriff Robert Holland, a Jail Incident Report, videotaped footage of Plaintiff being held in the chair restraint, and the Macon County Detention Center's Restraint Chair Policy. Defendants' summary judgment evidence shows that on March 3, 2017, Officer Dale Clouse was passing out morning medications to inmates, including Plaintiff. (Doc. No. 25-2 at ¶ 3: Dale Clouse Aff., Ex. B). Plaintiff had to have his medications crushed because multiple inmates and staff had reported that he was hoarding his medications and selling and/or trading them to other inmates, who would snort the medication after lights out. (Id. at ¶ 4). When Plaintiff came to the door to receive his medication, he was acting strangely. (Id. at ¶ 5). Specifically, Plaintiff got down on his knees at the food port and kept the right half of his body hidden behind the door and wall. (Id. at ¶ 6). He acted as if he had taken the medication, but Officer Clouse could see Plaintiff placing his pill cup on the floor before bringing it up to his mouth to consume it. (Id. at ¶ 7). Plaintiff acted as if he had taken his medication, but Officer Clouse observed that the only thing that came out of the pill cup was a very small amount of powder that landed on Plaintiff's lips. (Id. at ¶ 8).

Officer Clouse called for Plaintiff's cell door to be opened, at which time Plaintiff stood up and stomped on another pill cup that was on the floor and scooted his foot on the ground before kicking the pill cup toward the back of the cell. (Id. at ¶ 9). Officer Clouse observed white powder going across the floor in Plaintiff's cell. (Id.). Officer Clouse advised Plaintiff that he would

notify Sergeant Marion and Dr. Creel that he was still making attempts to hoard his medication. (<u>Id.</u> at ¶ 10).

After Officer Clouse closed and secured the door to Plaintiff's cell, Plaintiff began screaming and hitting the door to his cell, at which time Officer Clouse ordered that the cell door be re-opened. (<u>Id.</u> at ¶ 11). Plaintiff continued to yell and threatened Officer Clouse that if he came back into the cell he "would be sorry." (<u>Id.</u> at ¶ 12). After being placed in handcuffs, Plaintiff continued to threaten Officer Clouse and Officer Gibson, another officer on duty at the time, and tried to pull his hands away from Officer Clouse. (<u>Id.</u> at ¶ 13). Officer Clouse escorted Plaintiff to the elevator, where they were met by Sergeant Scott Marion. (<u>Id.</u> at ¶ 14). While in the elevator, Plaintiff continued to try to pull away from Officer Clouse and scream obscenities and threats at him and Sergeant Marion. (<u>Id.</u> at ¶ 15).

After exiting the elevator, Plaintiff was advised that he was being escorted to the restraint chair for his safety and the officers' safety. (<u>Id.</u> at ¶ 16). Officer Clouse, Corporal Crane, and Officer Mace placed Plaintiff in the restraints, while Plaintiff continued to yell obscenities and threats and stated he could snort his pills if he wanted to. (<u>Id.</u> at ¶ 17). After being placed in a cell, Plaintiff told Officer Clouse that he was going to find him "on the outside" and kill him. (<u>Id.</u> at ¶ 18). After being continually advised to calm down, Plaintiff told Officer Clouse to "go fuck himself" and that he was going to sue him. (<u>Id.</u>).

A subsequent search of Plaintiff's cell revealed that Plaintiff had various straws made from paper, with one straw having white powder on one end and in the inside. (<u>Id.</u> at ¶ 19). Plaintiff also had various contraband items, including a large cup with a liquid that smelled like alcohol, which were all removed from his cell and shown to Lieutenant Steve Stewart and Sergeant Doug

Hampton.  (Id.).  Plaintiff confirmed that he did, in fact, have alcohol when he told the officers not to throw his stuff away and that "hootch is good stuff, don't pour that out!"  (Id. at ¶ 19).

Officer Clouse drafted a Jail Incident Report on the date of the accident.  (Doc. No. 25-3: Ex. C).  The report notes that Officers Clouse, Crane, and Mace used force in the form of custodial escort and management chair.  (Id. at 3).  Plaintiff was held in the cell in the restraint chair for approximately two hours, during which time he was given breaks from the restraints as he constantly moved his body around in attempts to break free from the restraint chair.  (Doc. No. 25-4: Ex. D).  Officer Scott Marion closely monitored Plaintiff during his time in the restraint chair. (Doc. No. 25-5, Scott Marion Aff., Ex. E).  Marion asserts that he "advised [Plaintiff] to calm down because he was trying to break free from the restraints and yelling obscenities and profanities."  (Id. at ¶ 6).

In support of summary judgment, Defendants have also submitted the Macon County Detention Center Facility Policy and Procedure Manual's Restraint Chair Policy, which states that "[d]etention staff will use the restraint chair to control inmates who display behavior which may or does result in extensive destruction of property or who are in danger of causing physical harm to themselves or others."  (Doc. No. 25-6 at 1, Ex. F).  Defendants assert that Plaintiff's behavior put Plaintiff, Defendants, and other inmates in danger of physical harm, and that Defendants followed the Restraint Chair Policy in restraining Plaintiff.  See (Doc. No. 25 at p. 5; Doc. No. 25-7: Robert L. Holland Aff., Ex. G).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. <u>United

States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

      The party seeking summary judgment has the initial burden of demonstrating that there is

no genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the

movant has made this threshold demonstration, the non-moving party, to survive the motion for

summary judgment, may not rest on the allegations averred in his pleadings. <u>Id.</u> at 324. Rather,

the non-moving party must demonstrate specific, material facts exist that give rise to a genuine

issue. <u>Id.</u> Under this standard, the existence of a mere scintilla of evidence in support of the

non-movant's position is insufficient to withstand the summary judgment motion. <u>Anderson</u>,

477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to

preclude granting the summary judgment motion. <u>Dash v. Mayweather</u>, 731 F.3d 303, 311 (4th

Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." <u>Anderson</u>, 477 U.S. at 248. Further, Rule 56

provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the

non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III.    DISCUSSION

As Plaintiff was a pre-trial detainee when the incident occurred, his excessive force claim is analyzed under the Fourteenth Amendment.  Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015).  To prevail on his excessive force claim, Plaintiff must establish that the force used was objectively unreasonable.  Id.  In Kingsley, the Supreme Court set forth several, non-exclusive factors in assessing whether an officer's use of force was reasonable:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the Plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at 2473 (citing Graham v. Connor, 490 U.S. 386, 395, 396 (1989)).  In assessing whether Defendant used excessive force, this Court must make that determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. (citing Bell v. Wolfish, 441 U.S. 520, 540 (1979)).  In addition, the Court must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"  Id.

Applying the Kingsley factors, the Court finds that Defendants' use of force was objectively reasonable.  First, the relationship between the need for force and the amount of force used to restore discipline was closely matched.   Here, the undisputed evidence demonstrates that

placing Plaintiff in a restraint chair for a little over two hours as a result of Plaintiff's irate behavior after being caught trying to hoard medication was rationally related to the purpose of restoring and maintaining order at the detention center. Furthermore, Defendants have presented evidence on summary judgment that, before and at the time Plaintiff was placed in the restraint chair, he was hitting the door to his cell, yelling obscenities and threats to various officers, disregarding officers' orders to calm down and stop resisting, and resisting as he was escorted to another cell. Throughout the time Plaintiff was in the restraint chair, he was relieved from the restraints multiple times and an officer was observing Plaintiff the entire time. Moreover, Defendants note that all policies and procedures were followed when Plaintiff was placed in the restraint chair.

As for Plaintiff's alleged injuries, Plaintiff alleged in the Complaint that being held in the restraint chair exacerbated preexisting injuries to his spine and resulted in lessened dexterity in his hands, and that he can no longer work as an electronic technician/fiber/optic tech/installer. Plaintiff has presented no medical evidence, however, to show that he was injured as a result of being held in the restraints. Furthermore, Defendants have contended on summary judgment that any spinal injuries that Plaintiff may have resulted from a physical fight that he had with another inmate about a year before the incident. Defendants further argue that Plaintiff only exacerbated his injuries by attempting repeatedly to remove himself from the restraints while in the chair. The videotaped footage of the incident does show that Plaintiff repeatedly periodically moved around in the chair, attempting to loosen or break free of the restraints. Here, Plaintiff has simply not presented objective evidence in response to the summary judgment motion showing that he was injured by the alleged incident of excessive force.

Based on the foregoing, the undisputed evidence demonstrates that Plaintiff was placed in

the restraint chair in a good-faith effort to maintain or restore discipline, and the actions of Defendants were objectively reasonable. Courts have consistently held that the use of restraints for extended periods of time are not unconstitutional where the evidence shows that officers placed the inmate in restraints for the purpose of maintaining or restoring discipline. See Pugh v. Evans, No. 5:11-CT-3239-D, 2012 WL 6892816, at *3 (E.D.N.C. June 20, 2012) (finding that a pre-trial detainee being held in the restraint chair for two hours, after he sued the prison's intercom system inappropriately, was not "an unreasonable period of time," and noting that courts have held that the "use of devices such as restraint chairs . . . have repeatedly been found to be constitutional when used appropriately"); Norris v. Engles, 494 F.3d 634, 639 (8th Cir. 2007) (finding no constitutional violation where a pretrial detainee, who threatened to kill herself, was handcuffed, shackled, and chained to a floor grate for approximately three hours); Blakeney v. Rusk Cnty. Sheriff, 2004 WL 442672 (5th Cir. Mar. 11, 2004) (unpublished) (finding no constitutional violation where a disruptive pretrial detainee was confined in a restraint chair for twenty hours, but was allowed to use the bathroom and given water).

In sum, Defendants Crane and Clouse are entitled to judgment as a matter of law as to Plaintiff's claim that they violated his constitutional rights by placing him in a restraint chair for approximately two hours. Moreover, as to Plaintiff's claims against Defendant Marion based on failure to intervene to stop the alleged constitutional violation, law enforcement officials may be held liable in Section 1983 actions in which the officials "fail[] or refuse[] to intervene when a constitutional violation such as an unprovoked beating takes place in [their] presence." Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998); see also Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). To succeed on a theory of what is sometimes called "bystander liability," a plaintiff must show that the defendant officer: (1) knows that a fellow officer is violating an individual's

constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.  Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002).  Here, because there was no constitutional violation in the first instance, Defendant Marion cannot be held liable on a claim based on failure to intervene.

In sum, for the reasons stated herein, Defendants are entitled to summary judgment.[2]

## IV.      CONCLUSION

For the reasons stated herein, the Court will grant summary judgment to Defendants and dismiss this action with prejudice.

**IT IS, THEREFORE, ORDERED** that:

1.  Defendants' Motion for Summary Judgment, (Doc. No. 24), is **GRANTED**, and this action is dismissed with prejudice.

2.  The Clerk is directed to terminate this action.

Signed: January 9, 2019

Frank D. Whitney
Chief United States District Judge

---

[2]  Defendants raised qualified immunity as a defense to Plaintiff's claim.  Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.  The Court observes, however, that even if the Court were to find that a genuine issue of dispute existed as to whether Defendants violated Plaintiff's constitutional rights, Defendants would be entitled to qualified immunity in any event.  That is, even construing the evidence in the light most favorable to Plaintiff, it was not clearly established at the time of the alleged constitutional violation that restraining a pre-trial detainee for about two hours in a restraint chair violated his constitutional rights, where he was periodically allowed to have the restraints adjusted, and where an officer observed him the entire time.